**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ROGER B. MANUEL,

                **Plaintiff,**

-vs-                                      **Case No. 6:06-CV-846-ORL-KRS**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                **Defendant.**

_____

**ORDER**

This cause came on for consideration without oral argument on the Complaint

filed by Roger B. Manuel, seeking review of the final decision of the Commissioner of

Social Security denying his claim for social security benefits.  Doc. No. 1.  The

Commissioner answered the Complaint and filed a certified copy of the record before the

Social Security Administration (SSA).  Doc. Nos. 13, 15.  Pursuant to the consent of the

parties, this matter has been referred to me for disposition under 28 U.S.C. § 636(c).

Doc. Nos. 9, 10.

**I.     PROCEDURAL  HISTORY.**

In May 2002, Manuel applied for disability benefits under the Federal Old Age,

Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*.

(sometimes referred to herein as the Act).  R. 43-45. He alleged that he became

disabled on March 23, 2002. *Id*. Manuel's application was denied initially and on reconsideration. R. 31-37.

Manuel made a timely request for a hearing before an administrative law judge (ALJ). R. 38. An ALJ held a hearing on September 21, 2004. Manuel, represented by an attorney, testified at the hearing. R. 431-50.

After considering the testimony and the medical evidence presented, the ALJ determined that Manuel was insured under OASDI through the date of the ALJ's decision. R. 18. The ALJ found that although Manuel had worked at several part-time jobs, he had not engaged in substantial gainful activity since the alleged onset date of his disability. *Id.*

The ALJ concluded that the medical evidence showed that Manuel had cardiomyopathy, diabetes mellitus and low back pain, which were severe impairments. These impairments did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings).[1] R. 20. The ALJ found that Manuel's mental impairment was not severe because it resulted in at most mild functional limitations. R. 21.

---

[1] The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

The ALJ found that Manuel had the residual functional capacity (RFC) to perform light work, specifically to "lift/carry 20 pounds occasionally and 10 pounds frequently [and] . . . sit/stand/walk up to 6 hours in an 8-hour workday."  R. 22.  In reaching this conclusion, the ALJ gave significant weight to the opinions of reviewing physicians. R. 22.  The ALJ gave little weight to the opinion of Dr. Gadodia, one of Manuel's treating physicians, regarding Manuel's need to work only part-time, finding that the opinion was based on Manuel's subjective complaints and not on the physician's clinical findings. R. 22.  The ALJ also found Manuel's testimony about the limitations arising from his impairments was not fully credible. R. 21.

Manuel had past relevant work as a general office clerk, which the Dictionary of Occupational Titles classified as unskilled light work (DOT 209.562-010).  R. 22.  The ALJ concluded that Manuel could perform this work as it is generally performed in the national economy and as Manuel performed it.  Accordingly, the ALJ concluded that Manuel was not disabled. R. 22.

Manuel requested review of the ALJ's decision. R. 13.  On April 10, 2006, the Appeals Council issued a decision finding no basis to review the ALJ's decision.  R. 6-8. Manuel timely sought review of this decision by this Court.  Doc. Nos. 1, 9, 10.

## II.    JURISDICTION.

Plaintiff having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

## III.   STATEMENT OF FACTS.

The facts are adequately stated in the ALJ's decision that the parties' memoranda.  Although I have reviewed the entire record, I will only summarize the pertinent facts to protect Manuel's privacy to the extent possible.

Manuel was 52 years old on the alleged onset date of his disability.  R. 43.  He had a Bachelor of Science degree and had attended one year of graduate school. R. 434.

Manuel previously worked as a computer programmer in production control. R. 441-42.  In that job, Manuel estimated that he walked 2 hours, stood 1 hour and sat 1 hour each work day, and lifted up to 10 pounds.  R. 64. After the alleged disability onset date, Manuel worked part-time as a cashier, as a salesman at a retail store, and at two other part-time jobs.  R. 64, 72, 443-45.  At the time of the ALJ's hearing, Manuel was working part-time in the evening delivering newspapers.  R. 439.

Manuel was hospitalized in February 2002 due to chest pain and shortness of breath. R 211-13.  A heart catheterization was performed.  R. 206.  He was found to have atrial fibrillation, congestive heart failure, mild mitral regurgitation, left atrial enlargement, diabetes mellitus and an anxiety disorder, among other things.  R.  209. Shakti Bakshi, M.D., released Manuel on medication with instructions to rest for 3 days and lower his activity level for 1 week. R. 209; *see also* R. 304-05.

Thereafter, Gopal Gadodia, M.D., opined on April 22, 2002, that "[a]t present Manuel believes it would be difficult for him to keep on working as a cashier on a full-time basis at Publix."  R.  367.  Accordingly, Dr. Gadodia advised Manuel to work half-time,

about 4 hours per day 4 to 5 days a week.  He noted that if Manuel did not get too tired, he should be able to continue working.  *Id.*  Dr. Gadodia also noted that it would be difficult for Manuel to take a job that required prolonged standing.  R. 366.  When Dr. Gadodia saw Manuel again in July 2002, he did not note any restrictions on Manuel's ability to work.  R. 363.

Manuel was again hospitalized in October 2002 for chest pain and shortness of breath (dyspnea) on exertion.  R. 196-98.  The assessment was that the chest pain was musculoskeletal rather than cardiac in origin.  X-rays revealed that Manuel had degenerative changes in his lumbar spine and chronic sinusitis.  He was released on a variety of medications.  R. 192.

Later that month, Manuel was again hospitalized for right leg numbness without pain.  R. 180-82, 186.  X-rays revealed disc herniation in the thoracic spine and some bulging in the cervical spine.  R. 165-66; *see also* R. 332.  After being released from the hospital, he underwent a course of physical therapy.  R. 218-32.  The therapist's notes reflect that flexion and exercises helped relieve the numbness in Manuel's right leg for a short time. *See, e.g.,* R. 218, 221.  The physical therapy discharge summary dated December 5, 2002, reflects that Manuel could not return to work due to continued, sporadic numbness in his right lower leg especially after prolonged walking or sitting.  R. 230.

On November 2, 2002, Haleh Tabrah, M.D., examined Manuel for complaints of anxiety and somatization, which is the process by which psychological needs are expressed through physical symptoms.  R. 183; *see also* Stedman's Medical Dictionary

1634 (26th ed. 1995).  Dr. Tabrah's impression after interviewing Manuel was that he had a major depressive disorder, moderate, an adjustment disorder with anxiety, and an anxiety disorder, for which medication was prescribed.  R. 184.

In December 2002, David J. Packey, Ph.D., M.D., examined Manuel for his right leg pain and numbness.  Dr. Packey opined that Manuel's anxiety was aggravating his symptoms.  He encouraged Manuel to remain active, but not to do any lifting or spend extended time on his feet.  R. 272-74.

Gloria B. Hankins, M.D., prepared an RFC assessment in September 2002 after reviewing Manuel's records.  She opined that Manuel could lift up to 20 pounds occasionally and 10 pounds frequently, and sit, stand or walk about 6 hours in an 8-hour workday.  He should avoid concentrated exposure to hazards such as machinery and heights.  R. 140-47.  M. delaCerna, M.D., prepared another RFC assessment in April 2003 based on review of Manuel's records.  Dr. delaCerna concurred with Dr. Hankins, except she found that Manuel should also avoid concentrated exposure to extreme cold, humidity, and fumes.  R. 260-67.

In October 2002, Ann J. Adams, Psy.D., prepared a Psychiatric Review Technique Form (PRTF) after review of Manuel's records.  She noted that Manuel had an anxiety disorder that was not severe which would not cause any functional limitations. R. 148-61.  In February 2003, Rene Brown, Psy.D., also prepared a PRTF after review of Manuel's records.  She concurred with Dr. Adams, except that she found that Manuel's anxiety disorder might result in mild difficulties in maintaining concentration, persistence and pace.  R. 239-52.

In May 2003, Dr. Gadodia wrote that Manuel was having episodes of palpitations and dizziness arising from atrial fibrillation.  He adjusted Manuel's medication.  R. 354. In June 2003, Dr.Gadodia indicated that Manuel was still not doing well.  He recommended weight loss and an exercise program.  R. 352.  On September 15, 2003, Dr. Gadodia noted that Manuel had improved significantly, having lost weight and being able to walk a mile a day without chest pain and rarely being short of breath.  R. 348.

In July 2003, Dr. Packey again examined Manuel for complaints of pain and numbness in his right leg sometimes extending throughout the right side of his body. R. 270.  Dr. Packey indicated that these were not really different symptoms than those addressed the previous November.  R. 270.  Further testing confirmed mild disc disease in the lumbar and sacral spine and nerve conduction studies showed both sensory and motor polyneuropathy.  R. 268, 399.  Dr. Packey opined that Manuel had diabetic neuropathy, but he observed that "[t]he objective findings are not as severe as his symptoms."  R. 269.

Manuel sought emergency room treatment in March 2004 for chest pain and shortness of breath after heavy lifting.  R. 422.  A stress test and cardiac catheterization were normal.  R. 422.  Maria Stubbs, M.D., opined that the problems were noncardiac in origin.  R. 422.

At the ALJ's hearing, Manuel testified that he had shortness of breath on limited exertion.  R. 436, *see also* 81-82.  He had numbness in his arms lasting 1 to 1 ½ hours. R. 436-37. He also had numbness in his right leg and other parts of his body, but he did not need an assistive device to walk. R. 437.

Manuel was taking about 20 medications each day.  R. 435; *see also* R. 60-61, 63, 70, 126-27.  Some of these medications caused fatigue, requiring him to rest for 2 to 4 hours 3 to 4 times a day.  R. 435, 447.  Some medication also impaired his memory.  R. 438.

During a typical day, Manuel worked on the computer for 45 minutes to 1 hour in two sessions.  R. 440.  He helped his wife with cleaning and laundry, resting as necessary.  R. 82, 440-41.  He cooked using a microwave oven.  R. 85.  He walked and did sit-ups, push-ups and leg exercises about 1 hour each day.  R. 441.  He estimated that he could lift 25 pounds.  He could walk for about 45 minutes, and sit for 1 ½ hours.  R. 445-46.  He could stand for 3 to 4 hours if he had something to lean on for support.  R. 446.  He had difficulty driving long distances because of numbness in his leg, and he sometimes needed help getting out of the car due to the leg numbness.  R. 95, 117.

## IV.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A.  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to

disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090

(5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that

must be followed in determining whether a claimant is entitled to benefits.  In sum, an

ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the
> specific impairments set forth in 20 C.F.R. Part 404, Subpart
> P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former
> occupation?
>
> (5) Is the claimant unable to perform any other work within the
> economy?

20 C.F.R. § 404.1520(a)(4).  An affirmative answer to any of the above questions leads

to either the next question, or, on steps three and five, to a finding of disability.  A

negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800

F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore

entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274,

1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden

temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence

that there is other work available in significant numbers in the national economy that the

claimant has the capacity to perform."  *Id.* at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d

1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

## V.    ANALYSIS.

Manuel asserts two grounds supporting reversal.  First, he contends that the ALJ erred by failing to accord proper weight to the opinions of Drs. Bakshi, Gadodia and Packey and the reviewing physicians regarding his functional capacity.  Second, he asserts that the ALJ erred in relying on his ability to work part-time to support the conclusion that he could engage in sustained gainful activity.  I address only the first issue because I find it to be dispositive.[2]

Manuel argues that the ALJ erred by failing to credit the opinions of three treating physicians, Drs. Bakshi, Gadodia and Packey, limiting him to work to part-time work (Drs. Bakshi and Gadodia) with no extended periods on his feet (Drs. Gadodia and Packey).

> The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. . . . The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. . . . We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. . . . We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)(internal citations omitted).

---

[2]  The parties were advised that issues not specifically raised would be waived. Doc. No. 14 at 2.

The Commissioner correctly argues that Manuel takes Drs. Bakshi and Gadodia's limitations to part-time work out of context.  As discussed above, in April 2002, Dr. Bakshi limited Manuel to part-time work "for the next week."  Similarly, on April 22, 2002, Dr. Gadodia advised Manuel to work half-time, but he did not indicate that this was a permanent restriction.  Indeed, when Dr. Gadodia saw Manuel again in July 2002, he did not note any restrictions on Manuel's ability to work.

However, Dr. Gadodia and Dr. Packey both opined that Manuel should avoid jobs that required prolonged standing.  The ALJ does not discuss these restrictions in his decision.  Rather, he wrote that "there are no physicians placing any severe restrictions or limitations on the clamant physically or mentally."  R. 21.

The Commissioner concedes that the functional limitation with respect to prolonged standing is a medical opinion.  Doc. No. 19 at 7; *see also* 20 C.F.R. § 404.1527(a)(2)("Medical opinions are statement from physicians . . . that reflect judgments about . . . what you can still do despite impairment(s), and your physical or mental restrictions.").  He argues, however, that there is ample evidence in the record that the ALJ could have relied upon to find good cause to give less weight to Dr. Gadodia and Dr. Packey's opinion about Manuel's limitations with respect to prolonged standing.

After-the-fact support for an ALJ's decision is insufficient for the Court to determine whether an ALJ applied the proper legal standard and gave the treating physicians' opinions substantial weight or found good cause not to do so.  Rather, in these instances, the Court must reverse the ALJ's decision and remand the case for further evaluation of all of the evidence according to the weight required by law and require the Commissioner to render a decision "that will provide reviewing courts with the

-12-

basis for determining that he applied the correct legal standards." *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982).[3]

The same problem arises with respect to the opinions of the reviewing physicians that Manuel would have environmental limitations with respect to the conditions under which he could work.  While the ALJ wrote that he accorded those opinions significant weight, R. 21, he did not explain why he did not include the environmental limitations in his RFC assessment.

Accordingly, the Court must reverse the Commissioner's decision.  Manuel argues that the Court should also direct the Commissioner to award benefits to Manuel.  "This Court may reverse the decision of the Commissioner and enter an order awarding disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Kleja v. Barnhart*, 220 F. Supp. 2d 1330, 1334 (M.D. Fla. 2002)(citing *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993)).  In this case, the Commissioner has not yet considered the essential evidence because the ALJ concluded his analysis at step four of the sequential evaluation process.  Therefore, remand for further proceedings is required so that the Commissioner may properly evaluate the evidence and, if necessary, determine whether there are any jobs that Manuel could perform that are available in the national economy if he concludes that Manuel cannot return to his past relevant work.

---

[3] The failure to address the limitation on prolonged standing is not harmless error. The ALJ found that Manuel had the RFC to perform light work.  "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Soc. Sec. R. 83-10, 1983 WL 31251, at *6.

-14-

## VI.  CONCLUSION.

For the reasons set forth herein, it is **ORDERED** that the decision of the

Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42

U.S.C. § 405(g) for further proceedings.  The Clerk of Court is directed to issue a

judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** this 24th day of March, 2008.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE